## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TICKETS FOR LESS, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 20-2047-JAR-GEB** |
| **CYPRESS MEDIA, LLC, d/b/a**<br>**KANSAS CITY STAR** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

On February 2, 2020, the Court conducted a telephonic hearing on Plaintiff's Ex Parte Motion for Temporary Injunction (Doc. 2).  After hearing arguments and statements of counsel, as well as reviewing Plaintiff's briefs and relevant submissions, the Court denied Plaintiff's motion, as memorialized in this Order.[1]

### I.      Background

On January 27, 2020, Tickets for Less ("TFL") entered into an agreement with Defendant Cypress Media, LLC, d/b/a Kansas City Star ("KC Star" or "the Star"), whereby KC Star agreed to sell and TFL agreed to purchase the rights to the front page strip of The Kansas City Star, which is considered a "ROP Premium Position" under said agreement, for the date of Monday, February 3, 2020—the date after the historic Superbowl game featuring the Kansas City Chiefs football team (the "Contract").  On January 30, 2020, after the Star allegedly received a more lucrative offer for the ROP Premium Position front page strip of The Kansas City Star, it orally

---

[1]Docs. 6, 7.

informed TFL that it would not honor the Contract in which KC Star already had agreed to sell the rights to the front-page strip to TFL in favor of the more profitable deal.

On Friday, January 31, 2020, TFL filed a lawsuit against the Star in the Johnson County, Kansas District Court and sought a Temporary Restraining Order ("TRO") to compel the newspaper to run its ad on February 3 as contracted.[2]  At 2:07 p.m. on that date, the state court denied TFL's request for TRO via email because, *inter alia*, the application was not verified, the facts were speculative, and the Contract contains an escape provision permitting it to revise, alter, or reject any advertisement for any reason whatsoever, or to omit ads without notice.[3]  The court took the view that the "provision, a term of the contract that has been presented to the court in this ex parte review, makes the likelihood of success on the merits fade to unlikelihood."[4]

Undeterred, on Saturday, February 1, 2020, TFL filed this lawsuit in the United States District Court for the District of Kansas, alleging diversity jurisdiction and one claim of Anticipatory Breach of Contract.[5]  TFL requests the Court issue an ex parte TRO compelling Defendant to:

> (1) Not breach the contract entered into by TFL and KC Star on January 27, 2020, whereby TFL purchased the right to the front page strip of The Kansas City Star for the date of Monday, February 3, 2020;
>
> (2) Publish TFL's ad, pursuant to the contract entered into by TFL and KC Star on January 27, 2020, on the front page strip position in The Kansas City Star for the date of Monday, February3, 2020; and
>
> (3) Inform any other individual or entity with a purported interest in the front page strip of The Kansas City Star that TFL owns the

---

[2] Doc. 2-3.

[3] *Id.*

[4] *Id.*

[5] Doc. 1.

right to the front page strip of The Kansas City Star for the date of Monday, February 3, 2020.[6]

Further, TFL moves this Court for an ex parte TRO precluding the Star from:

> (4) Publishing any other individual's or entity's ad in the front page strip of The Kansas City Star, for which TFL purchased by way of its January 27, 2020 contract with KC Star, for the date of Monday, February 3, 2020.[7]

Court staff contacted counsel for TFL the evening of February 1 and a telephonic hearing was set for Sunday, February 2, 2020, at 10:45 a.m. At the hearing, counsel for TFL informed the Court that at 9:00 p.m. on February 1, he emailed copies of the Complaint and Motion for TRO and supporting documents to Loni Molacek, the digital marketing account executive sale at the Star who sold the advertising to TLF but did not inform Molacek of the hearing.

## II.    Legal Standard

"[A] district court may hold ex parte proceedings when a party requests a TRO."[8]  For an ex parte TRO, the movant must satisfy two prerequisites under Fed. R. Civ. P. 65(b)(1).  First, "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."[9]  Second, "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."[10]

---

[6]Doc. 2.

[7]*Id.*

[8]*ClearOne Commc'ns, Inc. v. Bowers*, 509 F. App'x 798, 802 (10th Cir. 2013).

[9]Fed. R. Civ. P. 65(b)(1)(A).

[10]Fed. R. Civ. P. 65(b)(1)(B).

When addressing a motion for temporary restraining order, the court applies the same standard as it applies to a motion for preliminary injunction.[11]  Four factors must be shown by the movant to obtain injunctive relief: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction is in the public interest.[12]  Because a preliminary injunction in an extraordinary remedy, the movant's right to relief must be clear and unequivocal.[13]

Additionally, some preliminary injunctions are disfavored and require a stronger showing by the movant.  The heightened standard applies to preliminary injunctions that (1) disturb the status quo; (2) are mandatory rather than prohibitory; or (3) provide the movant substantially all the relief that it could recover after a full trial on the merits.[14]  In seeking such an injunction, the movant must "make[ ] a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms."[15]  These requirements apply equally to a TRO request as to a preliminary injunction request.[16]

## III.   Discussion

TFL's request fails to meet the specific requirements for obtaining ex parte relief.  First, the Complaint is not verified and the memorandum in support of TRO attaches an affidavit from

---

[11]*Rangel-Lopez v. Cox*, 344 F. Supp. 3d 1285, 1289 (D. Kan. 2018) (citing *Sac & Fox Nation of Mo. v. LaFever*, 905 F. Supp. 904, 907 (D. Kan. 1995)).

[12]*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Fish v Kobach*, 840 F.3d 710, 723 (10th Cir. 2016) (quotation omitted).

[13]*Beltronics USA, Inc. v. Midwest Inventory Distr., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

[14]*Fish*, 840 F.3d at 723 (citations omitted).

[15]*Beltronics*, 562 F.3d at 1071 (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004) (en banc)).

[16]*See Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002).

TFL's Director of Marketing, Jennifer Forrest, merely attesting to the facts surrounding execution of the Contract.[17]  Forrest does not describe or show immediate and irreparable injury, loss, or damage will result before the Star, a known and readily locatable defendant, can be heard in opposition.  Second, in his declaration attached to the Motion for TRO, TFL's counsel sets out his client's efforts to contact the Star on January 30, culminating with a TFL representative telling the Star sales manager that it would bring legal action against the newspaper.[18]  Prior to emailing the Complaint and Motion for TRO to Ms. Molacek late Saturday February 1, counsel did not make any effort to give notice to the Star, but instead avers that:

> Notice should not be required before entering of the requested relief by Tickets For Less, LLC because there is insufficient time for notice to be provided between the present date and the Super Bowl around which the ad at issue centers before the requested relief becomes moot (i.e., the Super Bowl takes place on Sunday, February 2, 2020 and the newspaper containing said purchased ad space goes to print for Monday, February 3, 2020).[19]

Counsel fails to provide a satisfactory explanation why notice to the Star should not be required under these circumstances.  TFL received notice of the purported contract repudiation nearly 72 hours before the deadline for placing the ad late on February 2, 2020, during which time counsel filed two lawsuits and motions for emergency injunctive relief.  This is not a clear showing that immediate and irreparable harm will result to TFL before the Star can be heard in opposition and does not justify this Court granting TFL ex parte relief.

Further, the Court denies TFL's Motion for TRO because it has failed to establish two of the four elements required to secure the extraordinary relief it seeks.  The function of a TRO is to maintain the status quo for a brief period of time until the court can consider whether to issue a

---

[17]Doc. 2-2.

[18]Doc. 2-1.

[19]*Id.* ¶ 6.

preliminary injunction.  TFL's request for TRO clearly falls within the category of disfavored

injunctions as it seeks mandatory relief in the form of specific performance of the contract and

affords TFL all the relief it could recover after a trial on the merits.  Accordingly, TFL must

make a strong showing with regard to its likelihood of success on the merits of its claim for

anticipatory breach of contract.  The Court finds that TFL has failed to make the required

showing.

First, the Court is not convinced that it has jurisdiction over this case.  The amount in

controversy for diversity jurisdiction under 28 U.S.C. § 1332(a)(1) must exceed $75,000.  The

Complaint states that TFL will suffer damages in an unknown amount.[20]  TFL attaches an Order

Confirmation to its Complaint, but all of the payment information has been redacted.[21]  Although

counsel for TFL argued at the hearing that its damages exceed $75,000, the allegations in the

Complaint do not specifically support or request that amount.

Second, it is not clear that TFL has stated a plausible claim for anticipatory breach of

contract.  Under Kansas law,

> [A] renunciation or repudiation of a contract before the time for
> performance, which amounts to a refusal to perform at any time,
> gives the adverse party the option to treat the entire contract as
> broken and to sue immediately for damages as for a total breach. If
> the injured party does not wish to bring such an immediate suit for
> damages, he may elect between two other alternatives—that is, (1)
> to treat the contract as still binding and wait until the time arrives
> for its performance by the promisor, and at such time to bring an
> action on the contract, or (2) to rescind the contract and sue for
> money paid or the value of services or property furnished.[22]

---

[20]Doc. 1 ¶ 22.

[21]Doc. 1-3.

[22]*Coshocton Grain Co. v.Caldwell-Baker Co.*, No. 14-2589-JWL, 2015 WL 400911, at *2 (D. Kan. Jan. 28, 2015) (quoting *Stauth v. Brown,* 734 P.2d 1063, 1070 (Kan. 1987)).

Here, upon receipt of the notice from the Star that it would not run the front-page banner ad on February 3, TFL appears to treat the entire contract as terminated and sued for total breach, seeking damages.  However, by seeking a TRO that compels the Star to specifically perform the contract, TFL treats the contract as still binding and specifically seeks the Court's intervention to prevent a breach from occurring.  Plaintiff does not allege in its Complaint that either party has ceased performing under the Contract; at the hearing, counsel could not confirm that the Star had repudiated the contract in writing and speculated whether TFL's ad would be run in a different location or on a different date.  Nor could counsel explain why TFL's request for relief does not constitute an election to treat the contract as still binding.

Further, the following provision in the Contract appears to give the Star the right to reject the ad:

> **Acceptance/Rejection of Advertising**
>
> The Company reserves the right to revise, alter or reject any advertisement for any reason whatsoever, or to omit ads without notice. The Company may cancel any ad at its sole discretion, even if previously accepted for publication.  Advertising copy not timely submitted by Advertiser will be excluded.  Special position for advertising is not guaranteed but may be available for a premium and if agreed to in writing.[23]

TFL argues that this escape provision is ambiguous and only applies to rejection of an ad based on content.  The Court need not construe the Contract at this time to the find that this provision, coupled with the failure to state a plausible claim for anticipatory breach of contract as described above, causes TFL to fall short in meeting its heightened burden to show a likelihood of success on the merits that would entitle it to the disfavored relief it seeks.

---

[23]Doc. 1-2.

Nor has TFL met its burden to show a threat of irreparable harm.  To show such a threat, a plaintiff must demonstrate "a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages."[24]  There is no real dispute that TFL has one chance to run an ad in the Star the day after the Superbowl.  But the Court does not agree that loss of that opportunity as a result of the Star's breach of contract cannot be compensated by money damages.  TFL argues that it cannot put a price tag on the value of the ad running in the wake of a Kansas City Chief's victory and that the loss of customers and goodwill cannot be monetized.  Although the nature of the harm TFL alleges—lost opportunity for advertising under unique circumstances—is difficult to measure in monetary terms, that does not leave TFL without relief.  Compensatory damages for breach of contract are meant to compensate a party whose rights or benefits under the contract were undercut by the actions of another party.[25]  The damages TFL requests in its Complaint also include compensatory damages that are readily calculable and TFL fails to establish the requisite irreparable harm.

For the reasons recited on the record and herein, the Court concludes that TFL has not satisfied the requirements under Rule 65(b)(1) for ex parte relief nor met its heightened burden to show it is likely to prevail on the merits and that it would be irreparably harmed if the TRO is denied.  Accordingly, TFL's motion for TRO is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff Tickets For Less, LLC's Motion for Temporary Restraining Order (Doc. 2) is DENIED.

---

[24]*RoDa Drilling Co. v. Siegal*, 552 F.3d 1023, 1210 (10th Cir. 2009).

[25]*See, e.g., Waste Connections of Kan., Inc. v. Ritchie Corp.*, 298 P.3d 250, 266 (Kan. 2013) (explaining the duty of good faith and fair dealing inherent in every contract generally requires that each party to the contract refrain from intentionally and purposely doing anything that will destroy or injure the right of the other party to "receive the fruits of the contract."(citation omitted)).

**IT IS SO ORDERED.**

Dated: February 3, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE